JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Frederick Tate appeals from his convictions after a jury trial for felonious assault, attempted murder, having a weapon while under disability, and illegal possession of a weapon in a liquor establishment.
 {¶ 2} Appellant argues his conviction for illegal possession of a weapon in a liquor establishment was unsupported by sufficient evidence. Appellant further argues all of his convictions lack support in the weight of the evidence. Additionally, appellant argues the trial court made improper evidentiary rulings during his trial, and failed to follow statutory requirements in pronouncing sentence upon him.
 {¶ 3} Following a review of the record, this court finds no error occurred during trial that justifies overturning appellant's convictions. However, since the trial court failed to give its reasons for imposing the maximum sentences upon appellant for his convictions, the case must be remanded for a resentencing hearing.
 {¶ 4} Appellant's convictions result from his dislike of the treatment he received from Field Barnes, an older man who owned the Fireside Lounge, which was located at the top of a hill on Noble Road in the city of East Cleveland Barnes had owned the place for a number of years; thus, he was acquainted with the young people who lived in the neighborhood. Barnes also had a policy of permitting only persons over 30 years of age in his liquor establishment.
 {¶ 5} The record reflects that appellant associated with a group of young men who called themselves the "Hilltoppers." From Barnes' experience with them, the young men wore a type of clothing and engaged in some nefarious activities of which Barnes disapproved. Consequently, Barnes often would request them to leave if they were loitering around the premises; in his words, he'd "been having problems with them guys (sic) for years."
 {¶ 6} When appellant and his associates turned 21, they occasionally entered the lounge, but Barnes did not want them as customers. He always asked them to leave; further, he instructed his barmaids to refuse to serve them. As a deterrent, moreover, Barnes did not disguise the fact that he kept a shotgun behind the bar in the lounge for "protection." Appellant in particular gave Barnes "a hard time" and engaged him in "confrontation;" the two of them seemed especially at odds because appellant considered the area where the lounge was located "his," and, despite Barnes' disapproval of him, also began to date Barnes' young relative, Nicole Sanders.
 {¶ 7} On the night of February 23, 2002, Barnes held a birthday party at the lounge. The party honored the 60-year-old "uncle" of one of Barnes' barmaids, Stephanie Heiskell, who also was Barnes' "significant other." Appellant's girlfriend Sanders was among those who attended; she arrived at around 9:30 p.m.
 {¶ 8} As the place filled, Barnes noticed appellant come inside with two of his friends. Appellant wore "sagging jeans," a black hooded sweatshirt, a loudly-colored "sweater," and tennis shoes, apparel which Barnes considered inappropriate. Barnes approached the table at which the young men sat and told them to leave.
 {¶ 9} After ignoring Barnes briefly, appellant rose and strolled toward the door, leaving his friends at the table. Barnes followed to ensure appellant did as he had been instructed, and purposely blocked appellant from re-joining his friends. This prompted a confrontation; appellant stepped close to Barnes, shouted, "I'm a man, too," and demanded to know why Barnes wouldn't let him stay to drink and "always" showed disrespect toward him. A customer of Barnes' defused the situation by stepping forward to support the owner. Appellant at that point exited the lounge; his friends also soon left.
 {¶ 10} A few hours later, the party was winding down. Heiskell had taken a break and was returning from the restroom when she saw a man enter the lounge. The man was dressed in tennis shoes, black jeans and sweatshirt with the hood pulled over his hair, and a "scarf" or ski mask concealing his features. Nevertheless, Heiskell recognized the man as appellant. Appellant was carrying a gun. As he entered, he looked toward the bar, which Barnes stood behind, and began shooting.
 {¶ 11} The first shot struck a customer seated at the bar. Another felled Barnes. People began screaming and seeking cover. Shooting as he moved, appellant scrambled over a barstool, leaned over the bar, and fired several more times at Barnes as he lay on the floor. Appellant spoke as he aimed. He stated "he was a man," called Barnes names, and demanded to know "who the man now?"
 {¶ 12} Appellant was not alone, however, in two respects. Although one of his cronies stood at the door, jumping up and down and yelling, "Yeah," one of the partygoers pulled out a gun and began to return fire from where he lay on the floor. Appellant suddenly stopped shooting, pulled his right hand to his chest as though he were injured, and leapt away. Appellant and his supporter fled.
 {¶ 13} Heiskell immediately summoned the police and then drove Barnes to the hospital. Barnes, who had sustained four bullet wounds, identified appellant as his assailant. When questioned by police detective Martin Dunn two days later, Sanders also identified appellant as the shooter.
 {¶ 14} Appellant was indicted on six counts in connection with the incident. The first three counts charged him with felonious assault upon Barnes, Holmes, and another customer wounded in the incident; each of these counts contained two firearm specifications. Count four charged appellant with the attempted murder of Barnes and contained one firearm specification. Count five charged appellant with having a weapon while under disability; count six charged him with illegal possession of a firearm in a liquor permit premises. Upon his arrest on the charges, appellant had a wound on his right thumb that appeared consistent with "mishandling" the "slide action" on an automatic weapon.
 {¶ 15} After appellant elected to have only count five tried to the court, his case proceeded to a jury trial. The jury ultimately found appellant guilty of counts one, four and six, with the attached firearm specifications. Thereafter, the trial court also found appellant guilty of count five.
 {¶ 16} The trial court obtained a presentence report before sentencing appellant to terms of incarceration as follows: 3 years on the firearm specifications, to be served prior to and consecutive with concurrent terms of 8 years on count one and 10 years on count four, and 12 months on each of counts five and six, with the latter counts served concurrently with each other but consecutively with counts one and four, for a total of 14 years.
 {¶ 17} Appellant's appeal of his convictions presents five assignments of error. They will be addressed in logical order and combined when appropriate.
 {¶ 18} Appellant's third and fourth assignments of error state:
 {¶ 19} "III. The trial court erred in admitting prejudicial evidence of appellant's drug and gang activities.
 {¶ 20} "IV. The trial court erred in denying admission of exculpatory evidence relating to the shoe print."
 {¶ 21} Both of these assignments of error challenge evidentiary rulings made by the court during appellant's trial. It must be noted, however, that the decision whether to admit or to exclude evidence is a matter left within the sound discretion of the trial court and will not be reversed absent a demonstration the trial court abused its discretion. Columbus v. Taylor (1988), 39 Ohio St.3d 162; State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
 {¶ 22} Appellant first asserts testimony that he was involved in gang and drug-related activities not only lacked relevance to the issue of his guilt of the charged offenses, but also was unfairly prejudicial. This court disagrees.
 {¶ 23} Evidence is relevant if it tends to make the existence of any fact that is of consequence more probable or less probable. Evid.R. 401. If relevant, it may be excluded only if its probative value issubstantially outweighed by the danger of unfair prejudice. Evid.R. 403(A).
 {¶ 24} A review of the record reveals the testimony was introduced pursuant to Evid.R. 404(B), which permits evidence of other crimes, wrongs or acts if such evidence is used for the purpose of establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 25} The testimony appellant challenges provided the immediate background for the incident, since it established the relationship between appellant and Barnes and the tension that existed between them. The challenged evidence further provided appellant's motive for the shooting: he could no longer be seen before his cohorts as a youngster that Barnes could push around. Finally, the evidence demonstrated a reason for the sureness of the eyewitnesses' identification of appellant as the shooter, and negated the suggestion by the defense that Barnes was the target of some other enemy. State v. Ramjit (Feb. 15, 2001), Cuyahoga App. No. 77337; State v. Martin (Jan. 27, 2000), Cuyahoga App. No. 73455.
 {¶ 26} Appellant next challenges the trial court's decision to prohibit him from introducing into evidence during Det. Dunn's cross-examination one of the shoes appellant was wearing. Appellant asserts the jury could have compared it to one of the state's exhibits Dunn had identified during his direct testimony, viz., a photograph. This photograph showed the shooter's footprint; the shooter had left his footprint on the bar stool he had jumped upon to obtain a better position to fire at Barnes.
 {¶ 27} Appellant's assertion is rejected for two obvious reasons. It is unlikely the jury adequately could compare one physical object to the photograph of another object. It is even more unlikely appellant would be wearing the same shoe at trial that he had worn on the night of the incident; certainly, Dunn could not make this determination. Therefore, the evidence was irrelevant and, thus, properly excluded by the trial court.
 {¶ 28} For the foregoing reasons, appellant's third and fourth assignments of error are overruled.
 {¶ 29} Appellant's second assignment of error states:
 {¶ 30} "II. The trial court erred in denying appellant's Crim.R. 29 motion for acquittal on the charge of illegal possession of a firearm in a liquor permit premises where the evidence was insufficient to support the conviction."
 {¶ 31} Appellant argues that the state failed to produce evidence of an essential element of R.C. 2923.121, viz., that the Fireside Lounge holds a "D permit" to dispense liquor, as defined by R.C. Chapter 4303. This identical issue was addressed in State v. Capan (Apr. 19, 1995), Summit App. No. 16892, which observed that although the state had not presented either the permit itself or any other direct evidence to prove the establishment had been in possession of a D permit, that actually was not required.
 {¶ 32} "R.C. 4303.13 through 4303.183 govern the issuance of D permits. A D permit is required for the sale of alcoholic beverages for consumption on the premises. Some types of D permit allow the permit holder to sell only certain kinds of alcoholic drinks. * * * Since, [however,] a D permit of some sort is required before an establishment may sell [liquor], and since the uncontested evidence was that [liquor] was sold * * *, a reasonable jury could have concluded that the D permit element had been proven beyond a reasonable doubt." Id., at page 10 (footnotes omitted.)
 {¶ 33} The same reasoning applies herein. Several witnesses testified the Fireside Lounge had a state permit to sell alcoholic beverages; consequently, the trial court properly denied appellant's motion for acquittal on this count of the indictment.
 {¶ 34} Accordingly, appellant's second assignment of error also is overruled.
 {¶ 35} Appellant's first assignment of error states:
 {¶ 36} "I. The convictions are against the manifest weight of the evidence."
 {¶ 37} Appellant argues the evidence provided by the state to prove the identity of the shooter lacked credibility, because each of the witnesses had a reason to lie. This court disagrees.
 {¶ 38} The eyewitnesses to the shooting gave remarkably similar descriptions of the events leading up to the shooting, the clothing the shooter wore, and the shooter's actions and words during the incident; they differed mainly in their perspectives from their relative positions. Their testimony was corroborated by the physical evidence presented.
 {¶ 39} Appellant's girlfriend, Sanders, moreover, also was an eyewitness. Near the time of the incident, Sanders told the police that appellant had given her a story to tell the investigators to explain both his whereabouts at the time of the incident and the injury to his thumb, but that even she believed appellant had "been involved" in the shooting. She recanted her statement, but only when testifying in front of appellant at trial. After her recantation, however, her testimony became confused and incredible.
 {¶ 40} A review of the record, therefore, fails to reflect the jury lost its way in this case and rendered a verdict that was against the manifest weight of the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175; State v. Capan, supra.
 {¶ 41} Appellant's first assignment of error also is overruled.
 {¶ 42} Appellant's fifth assignment of error states:
 {¶ 43} "V. The trial court improperly sentenced appellant to the maximum sentence for each conviction where the record does not support the court's findings pursuant to R.C. 2929.14(C)."
 {¶ 44} Appellant argues that although the trial court stated findings on the record prior to imposing consecutive terms for the offenses for which he was convicted, the trial court nevertheless did not fulfill its statutory duty; appellant contends the trial court did not state the necessary findings for the imposition of maximum terms.
 {¶ 45} To impose a maximum sentence, the trial court is required to make a finding that a defendant fits within one of the categories listed in R.C. 2929.14(C), i.e., he committed "one of the worst forms of the offense," he posed "the greatest likelihood of committing future crimes," or that he was a certain major drug offender or repeat violent offender. While the trial court need not use the exact language of the statute, "it must be clear from the record that the trial court made the required findings." State v. Barker (Sept. 13, 2001), Cuyahoga App. No. 78965. The trial court also must give its reasons for selecting a maximum sentence. R.C. 2929.19(B)(2)(e).
 {¶ 46} Upon a perusal of appellant's sentencing hearing in this case, even the most liberal interpretation of the trial court's comments cannot meet the standard of review recently set forth in State v. Comer,99 Ohio St.3d 463, 468-469, 2003-Ohio-4165. Comer mandates the trial court to "clearly align each rationale with the specific finding to support its decision;" this mandate "applies with equal force to the length of sentences."
 {¶ 47} The trial court herein reviewed the applicable seriousness and recidivism factors pursuant to R.C. 2929.12, then stated in relevant part as follows:
 {¶ 48} "And the Court further finds that consecutive sentences are necessary to protect the public from future crime and to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.
 {¶ 49} "And the Court does find that the offender committed the multiple offenses while the offender was under a court sanction * * *.
 {¶ 50} "* * * Also, that no single prison term for any single offense committed adequately reflects the seriousness of his crimes committed or the harm done or that his criminal history indicates that consecutive sentences are necessary to protect the public from him."
 {¶ 51} As the foregoing demonstrates, rather than making any
specific statements to satisfy R.C. 2929.14(C) and 2929.19(B)(2), the trial court, instead, directed all of its comments to a justification of consecutive sentences. State v. Rowland (May 11, 2001), Hamilton App. No. C-000592; cf., State v. Barker, supra.
 {¶ 52} Based upon the trial court's failure to comply with Comer's mandate, therefore, this court is constrained to agree with appellant's argument. His fifth assignment of error, accordingly, is sustained.
 {¶ 53} Appellant's convictions are affirmed. Appellant's sentences are reversed, and this case is remanded for a new sentencing hearing in order for the trial court to comply with the statutory requirements for the imposition of both consecutive and maximum terms of incarceration upon appellant.
 {¶ 54} Sua sponte, the trial court is ordered to vacate the journal entry, dated January 9, 2003, that purports to assign a specific attorney "for all appeals up to and including Ohio Supreme Court as defendant is indigent." Further, appellate counsel in this case in the absence of a valid order from the trial court may not receive payment from public funds for his representation of appellant herein.
 {¶ 55} The sentence is reversed, and this cause is remanded to the lower court for further proceedings consistent with this opinion.
Colleen Conway Cooney, J., Michael J. Corrigan, P.J., concurs.
In Part and Dissents in Part with Separate Opinion.