JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Joseph Miller appeals from his conviction for fifth-degree felony theft upon the conclusion of the bench trial for him and his three co-defendants.
 {¶ 2} In his four assignments of error, appellant initially asserts the trial court improperly permitted into evidence a statement he gave to the police detective. Appellant further asserts the trial court's finding of guilt for a fifth-degree felony theft is flawed for two reasons: first, the court failed specifically to find the dollar amount involved; and, second, the court "misapprehended" the burden of proof necessary to prove the dollar amount. As an alternative and additional assertion, appellant claims his trial counsel provided ineffective assistance in failing to raise the foregoing challenge to his conviction.
 {¶ 3} This court has reviewed the record with appellant's assertions in mind, however, and finds none has merit. Consequently, his conviction is affirmed.
 {¶ 4} Appellant's conviction results from a series of incidents that occurred over the winter months of 2002 and 2003 in Cleveland area Home Depot stores. Store managers and loss-prevention officers ("LPOs") became aware a particular high-cost item was disappearing from the shelves at a significantly elevated rate. The item, a hard plastic kit manufactured by DeWalt, approximately the size and shape of a briefcase and containing many different tools, had a retail value of $499.
 {¶ 5} To aid one another, the managers and LPOs circulated their observations concerning the disappearances via voice mail messages. In this manner, over time, a pattern of circumstances surrounding the disappearances became apparent. The incidents occurred just after a group of four to five particular men visited the store; these men seemed to be acting in concert in a peculiar manner.
 {¶ 6} One of the men would place a DeWalt kit into a shopping cart, then push the cart around the store while speaking on a cellular telephone. Often, he placed a sign into the cart which covered the kit, and, often, he then permitted another colleague to take over the cart. Whomever had control of a cart eventually pushed it into the outdoor garden center area. Thereafter, either that man left the area without the cart, or one of the others returned indoors with it. In either event, the cart no longer contained the kit. None of the men purchased anything during his visit to the store.
 {¶ 7} During the same time period that the men were noticed, the outdoor steel-wire fence that surrounded the garden area was discovered to have been cut open.
 {¶ 8} By January 20, 2003 LPO Larry Gleba of Home Depot's Highland Heights store, a former police officer, knew the faces of these particular men. Gleba sat in his office viewing a video monitor of the area where the DeWalt kits were located when one, whom he later identified as Gary Boggs, entered his field of view. Boggs placed a kit into his shopping cart.
 {¶ 9} As Gleba watched, Boggs thereupon left the area, passing by another of the men, who later was identified as Karl Owens. Both Boggs and Owens spoke into cellular telephone units rather than to each other. Owens also placed a kit into his cart, along with another item, then covered the merchandise with a sign before he, in turn, left the area.
 {¶ 10} Gleba exited his office to enlist a few of the other employees to aid him in a cautious surveillance of the men. For nearly a half-hour, Jason Nobbe followed Owens as he pushed around the store a shopping cart that contained two kits covered by a sign. He constantly talked on his telephone. Often, Boggs joined him and Owens permitted Boggs to take the cart elsewhere.
 {¶ 11} At one point during Gleba's surveillance, he saw that two others, later identified as appellant and Brian Whitlow, also were together inside the store. Appellant and Whitlow acted similarly, i.e., each used a cellular unit as they pushed a cart through the store aisles; they frequented the aisles adjacent to the garden area, and sometimes crossed the path of Boggs and Owens.
 {¶ 12} Although he attempted to monitor all of the men, Gleba occasionally lost sight of one or another. All of them ultimately abandoned the carts and left the store without making any purchases. Following their departures, Gleba went to the garden area. There he discovered, near a new hole in the steel-wire fence, a cart that contained only a sign.
 {¶ 13} Patrick Hardy, LPO based at the Euclid store, observed the men earlier that same day; he more carefully had them followed during their presence in that store. They used the same method of operation. Upon becoming aware their actions in the garden center were monitored, they departed the store; Hardy found that three DeWalt kits had been hidden in areas they had visited.
 {¶ 14} The next day, Gleba was not on duty at the Highland Heights store, but assistant store manager Darryl Woods spotted all four of the defendants. Woods telephoned the police to report the presence of "a few individuals [who] were suspected of theft[s]" inside the store. Then he, too, enlisted the aid of his colleagues, including Nobbe, to watch the men.
 {¶ 15} Woods' observation was unsubtle enough that within fifteen minutes each of the men left the store without making any purchases. Woods noted the license number and model of the vehicle in which appellant and Whitlow left the parking lot, and, further, Woods and another employee followed Owens and Boggs to the adjacent restaurant. Meanwhile, Nobbe became aware that a pair of wire cutters and some "plastic wire zip ties" had been found near the fence in the garden center. The fence "had been cut in a few spots."
 {¶ 16} All four of the men were arrested soon thereafter. As police detective Dennis Matejcic transported Boggs to the station, Boggs offered an oral statement. That same day, Owens also made an oral statement to detectives Matejcic and Bruce Balzano.
 {¶ 17} Two days later, appellant indicated to Balzano that he wanted to make a statement. Prior to speaking with Balzano, appellant signed a "waiver of rights" form, then answered questions.
 {¶ 18} Appellant admitted to taking part with the other defendants in the theft of a total of six to eight DeWalt kits on two separate occasions, including January 20, 2003. Appellant additionally offered while his statement was converted into written form to show Balzano's partner, Kenneth Visoky, the location of the person to whom the DeWalt kits were delivered. However, appellant proved uncooperative during the ride, and by the time of his return to the station, refused to sign the written version of his statement, claiming "everything he had said was a lie."
 {¶ 19} Appellant eventually was indicted with his co-defendants on two counts viz., theft of property in an amount over $5000,[1] and possession of criminal tools. All of the defendants elected to have the case tried to the bench. Following the presentation of the state's case-in-chief, the trial court reduced count one of the indictment to theft in an amount over $500 but less than $5000,[2] and dismissed count two.
 {¶ 20} Ultimately, the trial court found each of the defendants guilty of the lesser-included offense. Appellant received a ten-month sentence, along with an order to pay $200 in restitution as his "share" of the total amount of the theft. He now presents the following four assignments of error in this appeal of his conviction:[3]
 {¶ 21} "I. Mr. Miller is only guilty of misdemeanor theft because the trial court did not return a verdict specifying that the loss involved was at least $500.
 {¶ 22} "II. Assuming arguendo that the trial court found Mr. Miller guilty of fifth-degree felony theft, the trial court operated under a misapprehension of the law regarding the appropriate burden of proof to be employed in evaluating the amount of the theft.
 {¶ 23} "III. The trial court erred in not suppressing use of State's Exhibit 23, the written statement purportedly made by Mr. Miller.
 {¶ 24} "IV. Assuming, arguendo, that this court determines that the issues raised herein were not sufficiently presented to the trial court, then Mr. Miller was denied the effective assistance of counsel"
 {¶ 25} Logic dictates the consideration of appellant's third assignment of error at the outset; in it, he argues that since he refused to sign the "written statement" he gave to the police, the trial court improperly denied his motion to suppress it. Appellant further asserts the statement lacked proper authentication for admission into evidence at trial. Appellant's argument and assertion are rejected.
 {¶ 26} The record reflects Matejcic orally advised appellant upon his arrest of his constitutional rights. After two days in jail, appellant nevertheless offered to make a statement, but, prior to speaking with appellant, Balzano not only repeated the constitutional advisement orally, but, additionally, gave appellant a written waiver-of-rights form. Only after Balzano and Matejcic witnessed appellant signing the written waiver did Balzano question him.
 {¶ 27} Appellant answered in an apparently candid manner. His words thereafter were recorded in shorthand, and at the conclusion of the interview, Balzano informed appellant the completed transcribed version of his statement would be presented to him for verification. Under these circumstances, the trial court reasonably determined appellant gave his statement voluntarily, and, therefore, suppression of the statement was inappropriate. State v. Spinks (1992), 79 Ohio App.3d 720; State v.Day, Cuyahoga App. No. 83138, 2004-Ohio-1449. Moreover, Balzano identified the written document as the finished transcription, thus satisfying Evid.R. 901(A). State v. Easter (1991), 75 Ohio App.3d 22.
 {¶ 28} Appellant's third assignment of error, accordingly, is overruled.
 {¶ 29} In his first and second assignments of error, appellant challenges the trial court's determination of guilt. He initially claims the trial court made no express finding concerning the value of the property taken from Home Depot so as to constitute the offense of felony, rather than misdemeanor, theft. The record, however, belies his claim.
 {¶ 30} In ruling on the defendants' motions for acquittal at the conclusion of the state's case-in-chief, the trial court stated evidence was presented "that show[ed] each of these defendants was involved in some effort of exerting control over merchandise, on [more than one] occasion, that would come to an amount in excess of $500." Specifically, at least two witnesses testified that a single DeWalt kit was worth $499 plus tax. Another witness testified that the number of DeWalt kits sold at the Highland Heights store was less than the number missing from inventory. The trial court indicated, however, that since the evidence that the value of that merchandise exceeded $5000 was "totally inadequate," trial would proceed on count one reduced to a fifth-degree felony offense.
 {¶ 31} The trial court subsequently specifically found, based upon the testimony that set the value of a single unit at $499 and appellant's admission that he was involved in the theft of at least "3 or 4 combo kits" that "beyond a reasonable doubt, that all four of these men are guilty under Count One." This was sufficient to establish appellant's guilt for the offense of felony theft. R.C. 2913.61(A); State v. Ratliff
(Nov. 30, 2000), Cuyahoga App. No. 77810.
 {¶ 32} Appellant also directs attention to certain statements the trial court made at the conclusion of trial. After finding appellant guilty of the reduced charge, i.e., the value of the property exceeded $500 but was less than $5000, in answer to defense counsel's request for a more specific amount for the theft, the trial court indicated that it would make no express determination concerning value until the time of sentencing, "because the burden of proof on whether they're guilty of a felony or not, and what degree, I can't say it was made at this time." The trial court went on to say that, "in terms of establishing the value," the burden of proof "as to who[m] might be responsible for value is only by preponderance of the evidence."
 {¶ 33} Although these remarks perhaps inaccurately were stated, in context, the court clearly intended them to apply only to the amount ofrestitution for which the defendants ultimately would be responsible. Any error the trial court made in these remarks after its finding of guilt was not only thus harmless, but was waived by appellant when, at his sentencing, he agreed to stipulate to Home Depot's "submitted * * * amended restitution amount of $1,322." State v. Williams (1977),51 Ohio St.2d 112.
 {¶ 34} For the foregoing reasons, appellant's first and second assignments of error also are overruled.
 {¶ 35} This court's disposition of appellant's first three assignments of error effectively answers appellant's final, alternative assertion presented in his fourth assignment of error concerning the effectiveness of defense counsel's assistance.
 {¶ 36} In evaluating defense counsel's performance, this court presumes competency. State v. Smith (1985), 17 Ohio St.3d 98. A review of the record in this case demonstrates counsel was both well-prepared and effective. He not only vigorously pursued a motion to suppress appellant's admission of guilt, but obtained for appellant a reduction of the first count of the indictment and a dismissal of the other. Consequently, appellant cannot meet his burden to prove counsel's performance was deficient. State v. Bradley (1989), 42 Ohio St.3d 136;State v. Bailey (Apr. 27, 2000), Cuyahoga App. No. 76190; State v.Wilcox (July 8, 1993), Cuyahoga App. No. 63112.
 {¶ 37} Accordingly, appellant's fourth assignment of error also is overruled.
 {¶ 38} Appellant's conviction is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. and Corrigan, J. concur.
[1] [MISSING TEXT]
[2] [MISSING TEXT]
[3] These are set forth as presented by appellant, without corrections to either grammar or punctuation.