JOURNAL ENTRY AND OPINION
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct. Prac.R. II, Section 2(A)(1).
{¶ 1} After a jury convicted him of two counts of theft and one count of possession of criminal tools, defendant-appellant Lefonza Lee appeals his convictions with five assignments of error.
 {¶ 2} Lee claims that the jury heard impermissible "other acts" testimony, that one of the jurors should not have been permitted to serve, and that these two "errors" demonstrate his trial counsel rendered inadequate assistance. Lee further claims that the trial court acted improperly in refusing to give the jury an instruction on the lesser-included offense of attempt. Finally, he claims his convictions are unsupported by the sufficiency of the evidence.
 {¶ 3} Following a review of the record, this court finds none of Lee's claims has merit. His convictions, therefore, are affirmed.
 {¶ 4} Lee's convictions result from incidents that occurred on the afternoon of September 22, 2005 at the Beachwood Place Mall located in Beachwood, Ohio. Aaron Wery, a loss prevention agent for Nordstrom's Department Store, testified he was working that day in the video surveillance room when he noticed a man later identified as Lee enter the store. Lee attracted Wery's attention because he displayed "indicators" as a possible shoplifter. Among other "indicators," Lee carried a large, colorful paper bag by its handles, but the bag had no weight; that is, it appeared to be empty.
 {¶ 5} Wery radioed his colleague, Ellen Kolman, to alert her. After Kolman spotted Lee, Wery requested her to switch places with him. Kolman thus quickly proceeded to the video surveillance room. As Wery went out to the sales areas, Kolman monitored Lee on the store's closed circuit cameras as he walked around the store. The cameras recorded the scene on videotape.
 {¶ 6} Thus, she observed that when Lee came into the "studio" department, he reached for a large ladies designer-label handbag on display and placed it into the paper bag he carried. Lee then proceeded to a second display table, grabbed a second expensive ladies handbag, and repeated his action. Finally, he went to a third display, took yet another ladies handbag, and walked behind a pillar, where he bent down. When Lee reemerged in view, the third handbag was no longer in his grip.
 {¶ 7} By this time, Wery had located Lee. Wery noticed that the paper bag now seemed "stuffed." Lee exited the store with Wery following, turned to see Wery behind him, and, apparently realizing Wery's position, placed the paper bag on the ground.
 {¶ 8} Wery identified himself, picked up the bag, and requested Lee to accompany him back inside. Lee began to walk away, telling Wery he "had nothing," but stopped when he heard Kolman radio Wery that she had summoned the Beachwood police. Lee then appeared to cooperate. However, after they reentered the store, Lee fled. Wery could not catch him.
 {¶ 9} Beachwood police officer Jamey Appell responded to the call from Nordstrom's. Since the police station was only minutes away, he arrived quickly. Kolman showed him the videotape. By that time, Lee had been located and detained by a security guard at another mall store, so Appell proceeded there with Wery. Once Wery identified Lee as the perpetrator, Appell arrested Lee for theft and transported him to the station.
 {¶ 10} After Appell had completed the "booking" process, he released Lee pursuant to department policy; later, one of the detectives would take the matter to the county grand jury. Lee asked Appell the location of the nearest bus stop before he left.
 {¶ 11} Within a half-hour, Appell heard a radio call indicating that a theft had occurred at the Beachwood Place Saks Department Store. Laura O'Donnell, a sales clerk at Sak's, testified she was working as a "greeter" when Lee exited the store, carrying a paper bag. O'Donnell wished Lee a good evening, but as he cleared the doorway into the mall, the "sensor" alarm activated. She followed him, asking if a clerk may have left a sensor on one of the items in his bag. Lee dropped the bag and ran.
 {¶ 12} By that time, a few members of the store's security team, including Peggy Bogacki, were already close by. Bogacki, the store's asset protection manager, stated Lee had been under surveillance upon his entry into the store due to a previous incident.
 {¶ 13} As her colleagues unsuccessfully attempted to apprehend Lee, Bogacki examined the bag he dropped. She found several women's cashmere sweaters inside. Later, Bogacki viewed a store camera videotape which depicted a glass display table empty of sweaters after Lee passed by with his paper bag. Bogacki subsequently showed the videotape to Appell.
 {¶ 14} Lee eventually was indicted on two counts of theft in an amount between five hundred and five thousand dollars and one count of possession of criminal tools, to wit: a bag. His case proceeded to a jury trial. After hearing the testimony and viewing the exhibits introduced into evidence, including the videotapes, the jury found Lee guilty of the charges. The trial court ultimately sentenced Lee to a total term of incarceration of twenty-two months for his convictions.
 {¶ 15} Lee challenges his convictions with the following assignments of error.
 {¶ 16} "I. Plain error occurred with the admission of other acts testimony in violation of Appellant's rights under Article I, Section 16
of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.
 {¶ 17} "II. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to object to inadmissible other acts testimony.
 {¶ 18} "III. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to question or otherwise challenge juror Richard Mendelsohn in the voire (sic) dire stage of the trial.
 {¶ 19} "IV. The trial court erred and denied appellant his constitutional right to due process when it denied defense counsel's request for a lesser included jury instruction.
 {¶ 20} "V. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Appellant was guilty of theft and possession of criminal tools."
 {¶ 21} Since Lee's first three assignments of error are related, they will be addressed together. In them, Lee argues his trial counsel failed to take actions that compromised his right to a fair trial; thus, those failures constituted "plain error" and also demonstrated counsel's ineffectiveness, all of which requires reversal of his convictions.
 {¶ 22} The doctrine of "plain error" is "to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." State v. Cooperrider (1983),5 Ohio St.3d 226, 227.
 {¶ 23} To sustain a constitutional claim of ineffective assistance of trial counsel, an appellant has the burden to demonstrate not only that counsel substantially violated an essential duty she owed to her client, but, additionally, that the violation prejudiced him. State v.Bradley (1989), 42 Ohio St.3d 136, citing Strickland v. Washington
(1984), 466 U.S. 688. Trial counsel is strongly presumed to have rendered adequate assistance, and this court will not second-guess what can be considered a matter of trial strategy. Vaughn v. Maxwell (1965),2 Ohio St.2d 299.
 {¶ 24} A review of the record in this case with respect to Lee's arguments establishes neither that "plain error" occurred at trial nor that counsel provided ineffective assistance. State v. Whatley, Cuyahoga App. No. 86267, 2006-Ohio-2465; State v. Miller, Cuyahoga App. No. 84431, 2005-Ohio-771.
 {¶ 25} Lee first asserts counsel should have objected to certain testimony given by Bogacki on direct examination. According to Lee, Bogacki's statement that she and her colleagues "had been * * * watching him for probably about two weeks" prior to September 22, 2005 constitutes improper "other act" testimony in violation of Evid.R. 404(B). This court disagrees.
 {¶ 26} Evid.R. 404(B) prohibits evidence "of other crimes, wrongs or acts * * * to prove the character of a person in order to show that he acted in conformity therewith." (Emphasis added.) Thus, generally, evidence of the defendant's other activities is "inadmissible to prove the accused has a propensity to commit crimes." State v. Ogletree, Cuyahoga App. No. 87483,2006-Ohio-6167, ¶ 25. The challenged testimony, however, does not fit within that prohibition.
 {¶ 27} Although Lee contends Bogacki's testimony must have led the jury to assume he had committed thefts in the store previously, a review of Bogacki's statement reveals she did not describe any of Lee's actions. Rather, she was describing her own actions, which explained the "immediate background" of the incident. Id., at ¶ 36. Under these circumstances, the testimony did not violate Evid.R. 404(B), and trial counsel, therefore, had no reason to object. State v. Tate, Cuyahoga App. No. 82344, 2003-Ohio-6856.
 {¶ 28} Lee next contends counsel permitted a juror to remain on the panel for no legitimate reason. Lee asserts the juror, an attorney, indicated during voir dire that he had personal dealings with the trial judge, which demonstrated bias against the defendant and obligated trial counsel to challenge the juror "for cause" pursuant to Crim.R. 24 (B). The record, however, provides no support for this assertion.
 {¶ 29} Instead, the juror, Richard Mendelsohn, stated on the record that while he had previously been a prosecuting attorney, he currently "[did] defense." Indeed, the prosecutor admitted Mendelsohn "beat [him] up in court * * * before." Mendelsohn informed the court that he knew both the prosecutor and Lee's trial attorney equally, and, thus, indicated he would remain impartial.
 {¶ 30} The mere exchange of some banter between Mendelsohn and the trial judge provides no suggestion to the contrary. Under these circumstances, this court will not presume Lee's trial attorney made a tactical error in refusing to exercise a peremptory challenge to remove Mendelsohn from the jury.
 {¶ 31} For the foregoing reasons, Lee's first, second and third assignments of error are overruled.
 {¶ 32} In his fourth assignment of error, Lee argues the trial court improperly refused his request for a jury instruction on the lesser-included offense of "attempted" theft. He contends that evidence which demonstrated he "abandoned" the stores' property before he fled justified such an instruction.
 {¶ 33} R.C. 2913.02(A) prohibits a person, "with purpose to deprive the owner of property," from "knowingly" obtaining or exerting "control" of the property without the consent of the owner. R.C. 2923.02 defines criminal "attempt" as "engaging] in conduct that, if successful, would constitute or result in the offense." (Emphasis added.)
 {¶ 34} An instruction on a lesser included offense is appropriate only where "the trier of fact can find for the defendant andagainst the state on some element of the greater offense which isnot required to prove the commission of the lesser offense," while finding "for the state on the elements required to prove the commission of the lesser offense." State v. Solomon (1981), 66 Ohio St.2d 214, paragraph two of the syllabus (emphasis added). The trial court retains discretion to refuse to instruct the jury on a lesser included offense. Id.
 {¶ 35} No abuse of discretion occurred in this case. A review of the evidence demonstrates the state established the elements of R.C.2913.02(A). On the other hand, the trial court correctly assessed the evidence as failing to establish that a mere "attempt" occurred. Lee wassuccessful in exercising control over the stores' property, since he left the stores without paying for the items. Lee's failure toescape with the property does not prove he made only an "attempt."State v. Randazzo, Cuyahoga App. No. 79667, 2002-Ohio-2250.
 {¶ 36} Consequently, Lee's fourth assignment of error also is overruled.
 {¶ 37} Lee argues in his fifth assignment of error that, with respect to the incident that occurred at the Sak's Department Store, the trial court should have granted his Crim.R. 29 motions for acquittal.
 {¶ 38} He contends that the evidence was insufficient to prove he committed the offenses there. Specifically, Lee asserts the videotape of the incident failed to show that he actually took the sweaters, Appell's testimony indicated he lacked both the means and the time to return to the mall to commit the crimes, and, further, evidence concerning the value of the items was inadequate.
 {¶ 39} When ruling on a defendant's motion for acquittal, the trial court is required to view the evidence in a light most favorable to the prosecution to determine if reasonable minds could reach different conclusions as to whether the material elements of an offense are proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421,1997-Ohio-372; State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 40} In this case, Bogacki testified that the bag Lee dropped before he fled contained several cashmere women's sweaters that she previously saw arranged on a display inside the store. She stated the display was empty after Lee went past it.
 {¶ 41} O'Donnell stated that the store's sensors activated when Lee walked out, and that he dropped the bag he was carrying before she could stop him.
 {¶ 42} Furthermore, Bogacki identified photographs of the items she subsequently removed from Lee's bag, stating the items were cashmere women's sweaters, were Sak's merchandise that totaled $1518.00 in value, and were the items that previously had been inside on the display table.
 {¶ 43} Appell testified that the police station was within close walking distance of the mall. He stated that in his estimate, the mall was "probably a five to six minute walk * * * down Richmond Road" from the police station.
 {¶ 44} From the evidence presented, therefore, the trial court correctly denied Lee's motions for acquittal with respect to the charges related to the Sak's incident. State v. Miller, supra; State v.Randazzo, supra.
 {¶ 45} Lee's fifth assignment of error, accordingly, also is overruled.
 {¶ 46} Lee's convictions are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
FRANK D. CELEBREZZE, JR., A.J. and ANN DYKE, J. CONCUR.