[Cite as *State v. Davenport*, 2011-Ohio-4635.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95911**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DWAYNE DAVENPORT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-520917

**BEFORE:**   Blackmon, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:**   September 15, 2011

**ATTORNEY FOR APPELLANT**

Patrick E. Talty
20325 Center Ridge Road
Suite 512
Rocky River, Ohio 44116-4386

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:  Lauren Bell
Aaron Brockler
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶ 1}  Appellant Dwayne Davenport appeals his convictions and assigns the following errors for our review:

> "I. Defendant-Appellant was denied equal protection under the law when the judge of the trial court improperly denied defendant-appellant's right to exercise a peremptory challenge to a juror."

**"II.  The trial court erred in denying defendant-appellant's motion for acquittal where the evidence is not sufficient to support conviction."**

**"III. The verdict of the jury finding defendant-appellant guilty is against the manifest weight of the evidence."**

**{¶ 2}** Having reviewed the record and pertinent law, we affirm Davenport's convictions.   The apposite facts follow.

**{¶ 3}**  On February 12, 2009, the Cuyahoga County Grand Jury indicted Davenport with four counts of aggravated murder, with a felony murder specification, one count of aggravated robbery, and one count of aggravated burglary.   All six counts had one and three-year firearm specification attached.   Davenport pleaded not guilty at his arraignment, several pretrials were conducted, and a jury trial was scheduled.   Prior to trial, the state dismissed the felony murder specifications and one count of aggravated murder.

## Jury Trial

**{¶ 4}** At trial, the state presented the testimony of ten witnesses, including Roderick Hairston, who testified that on January 16, 2009, he was living at a boarding house in East Cleveland, Ohio, with three other boarders.  Hairston  testified that boarders Omar Johnson and Charles Murphy shared a bedroom, while boarders Michael Grisette and Hairston had their own rooms.

–4–

**{¶ 5}** Shortly before noon, Myron McClutchen contacted Hairston and offered to purchase drugs, but Hairston refused because McClutchen owed him $50 from the last transaction. Hairston testified that a few minutes later, McClutchen and Davenport appeared at the boarding house and were admitted by Johnson.

**{¶ 6}** Davenport pulled out a black semi-automatic handgun, stuck it in Hairston's face, and demanded money. As Hairston was in the process of emptying his pockets, he noticed that a third individual, Tommie Adams, who had a black revolver, was also in the house. Adams ordered Hairston to hand over his "stash," referring to his drugs, but he denied having any drugs.

**{¶ 7}** Adams ordered Hairston at gunpoint upstairs towards his bedroom, while McClutchen and Davenport followed behind. Adams entered the bedroom, but McClutchen and Davenport remained in the hallway. While Adams was searching the bedroom, Hairston observed Davenport kick open the door to Grisette's room and fire a single shot into the room, at which point, all three men ran out the house.

**{¶ 8}** Hairston subsequently alerted Johnson and Murphy that the men had fled the house. Hairston testified that when they checked in Grisette's room, they found his dead body in a pool of blood.

{¶ 9} Davenport's codefendant, McClutchen testified that on January 16, 2009, he went to purchase drugs from Hairston, but Adams pulled out a revolver and Davenport pulled out a "glock" and proceeded to rob Hairston. McClutchen testified that Adams and Davenport forced Hairston at gunpoint upstairs to his room. McClutchen testified that Davenport kicked open the door to one of the bedrooms, which was occupied by a man with a walker, and then fired into the room.

{¶ 10} McClutchen stated that they immediately fled after Davenport fired into the bedroom. When the three met up later, Adams demanded to know why Davenport had fired into the room, and Davenport responded that he was going to shoot anything that moved.

{¶ 11} Testimony of Adams, Davenport's second codefendant, corroborated McClutchen's testimony. Adams, Mclutchen, and Davenport went to the boarding house to rob Hairston. While Adams was in Hairston's bedroom searching for the drugs, he heard a single gunshot. They immediately fled and met up on the next street over. When Adams asked Davenport why he had fired the shot, Davenport indicated that he was going to shoot anything that moved.

{¶ 12} The jury found Davenport guilty of the lesser offense of murder, in Count 1, with the one-and three-year specifications attached, and guilty of

the remaining four counts as charged in the indictment. On October 4, 2010, the trial court sentenced Davenport to an aggregate prison term of 25 years to life. Davenport now appeals.

### Peremptory Challenge

{¶ 13} In the first assigned error, Davenport argues the trial court improperly denied his rights to exercise a peremptory challenge to a given juror.

{¶ 14} In *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution.

{¶ 15} Trial courts are to apply a three-step procedure for evaluating claims of racial discrimination in peremptory challenges. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶64. First, the opponent of the peremptory strike must make a prima facie case of racial discrimination. Id. "To make a prima facie case of such purposeful discrimination, an accused must demonstrate: (a) that members of a recognized racial group were peremptorily challenged; and (b) that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory

challenges to exclude jurors on account of their race." *State v. Hill* (1995), 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271.

**{¶ 16}** Second, if the trial court finds that the opponent has set forth a prima facie case, then the proponent of the strike must come forward with a racially neutral explanation for the strike. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶106. The explanation need not rise to the level justifying exercise of a challenge for cause.   Id.

**{¶ 17}** Third, "if the proponent puts forward a racially neutral explanation, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved purposeful racial discrimination." *State v. Herring*, 94 Ohio St.3d 246, 256, 2002-Ohio-796, 762 N.E.2d 940. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Collins v. Rice* (2006), 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824, quoting *Purkett v. Elem* (1995), 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (per curiam). The trial court, however, may not simply accept a proffered race-neutral reason at face value; it must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual. *Frazier*, 115 Ohio St.3d at ¶65.

{¶ 18} In reviewing a trial court's ruling on a Batson challenge, we will not disturb the court's decision unless we find it to be clearly erroneous. See *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶61. This deferential standard arises from the fact that step three of the *Batson* inquiry turns largely on the evaluation of credibility by the trial court. See *Herring*, 94 Ohio St.3d at 252,762 N.E.2d 940, citing *Batson*, 476 U.S. at 98.

{¶ 19} In the instant case, during voir dire, the following exchange took place:

"Ms. Ranke:     * * * At this time the defense would like to thank and excuse juror number 7.

"The Court:     Thank you, ma'am.   Actually I want you to take a seat for a minute.   I want to see counsel at sidebar.

"* * *

"The Court:     Let's talk about this on the record.   The reason I called you up to sidebar is we're going through challenges and obviously I'm keeping track and I noticed that all three of defense challenges have been white, and I've asked for a neutral reason.   As you know *Batson* works both directions.   Not just about the State and not just about one race.   It's about a fair seating of the jury.   I'm not satisfied with the explanation I heard at sidebar so I want to give defense counsel the opportunity to state their reason clearly on the record and then give the State an opportunity to respond before I decide.   Go ahead Ms. Ranke.

"Ms. Ranke: * * * As I indicated, she has a brother - - I did not have my notes when I was talking at side bar. She has a brother who is a police officer in Stow. So that shows at least a relationship with law enforcement. That certainly does not mean she can't be fair but certainly that is a concern to my client. Secondly, she has a brother and a son, that although she doesn't own firearms that indicated that they both owned guns. I believe her body language in answering questions both to the court, both to the State and to defense counsel indicated a very rote yes or no. * * * I believe her body language indicated that she was not necessarily giving full answers to the questions." Tr. 526-528.

{¶ 20} The above exchange involves the first and second steps of the three-step procedure regarding the *Batson* analysis. First, the trial court noted that all three of defense counsel's peremptory challenges were white jurors. Second, defense counsel suggested that juror number 7 was excused because of her connection to law enforcement, family members' ownership of guns, and evasive answers.

{¶ 21} In the third step of the *Batson* analysis, the court must decide whether the neutral explanation offered by the proponent of the strike is credible or instead is a "pretext" for unconstitutional discrimination. *State v. Gowdy* (2000), 88 Ohio St.3d 387, 727 N.E.2d 579, citing *State v. Hernandez* (1992), 63 Ohio St.3d 577, 589 N.E.2d 1310.

**{¶ 22}** In rejecting defense counsel's explanation, the trial court stated in pertinent part as follows:

> **"I will just say that I don't think her answers were at all evasive or that she was disinterested.  I think she was just one of those grandmas that's very crazy about a grandchild.  I didn't see anything about her that indicated she wouldn't pay attention.  She is also not the only juror left who has some familiarity with guns.  \* \* \* Well the question is on this juror is there sufficient race neutral reason, and I don't believe that there is.  So the challenge will not stand.  She will remain. Okay. \* \* \* You can exercise the challenge of whoever you choose, but you're going to have to give me a sufficient race neutral reason.  It may be that you'll challenge another white juror, and I'll be satisfied with the explanation.  I'm not satisfied with this."** Tr. 529-532.

**{¶ 23}** In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral-explanation for a peremptory challenge should be believed.  There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.  *State v. Bolton*, Cuyahoga App. No. 81638, 2003-Ohio-3020.

**{¶ 24}** Further, as with the state of mind of a juror, evaluation of counsel's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.  Id.  Here, despite defense counsel's proffer that the prospective juror was being evasive and appeared disinterested, the trial court specifically stated that it disagreed with that assessment.  The

trial court had the opportunity to observe the prospective juror's body language and voice inflection and reached a different conclusion from defense counsel.

{¶ 25} We recognize that a suggestion that a juror was evasive or disinterested has been held to be a sufficient race neutral reason to survive a *Batson* challenge. See *State v. Boynton*, Cuyahoga App. No. 93598, 2010-Ohio-4248. However, in the instant case, the trial court made a specific determination that defense counsel's explanation was pretextual. Consequently, we affirm the trial court's decision disallowing defense counsel's peremptory challenge of juror number 7. Accordingly, we overrule the first assigned error.

## Sufficiency of Evidence

{¶ 26} In the second assigned error, Davenport argues the evidence was insufficient to support his convictions.

{¶ 27} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, Cuyahoga App. No. 95095, 2011-Ohio-1241, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

–12–

**{¶ 28}** In analyzing the sufficiency issue, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965.

**{¶ 29}** In the instant case, the victim, Hairston, testified that he was robbed at gunpoint by Davenport, that he observed Davenport kick open the door to Grisette's bedroom and fire a single shot into the room. Also, both Adams and McClutchen, Davenport's codefendants, testified that they went to the boarding house to rob Hairston.

**{¶ 30}** In addition, both codefendants testified that while the robbery was in progress, Davenport kicked open Grisette's bedroom door and fired a single shot into the room. Further, both codefendants testified that after they fled the scene, they inquired of Davenport why he had fired into room, and he indicated that he was going to shoot anything that moved. Finally, the evidence indicates that Grisette's death resulted from a single gunshot wound.

{¶ 31} After reviewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found that the essential elements of the charged crimes were proven beyond a reasonable doubt. Consequently, the trial court properly denied Davenport's motion for acquittal. Accordingly, we overrule the second assigned error.

## Manifest Weight of the Evidence

{¶ 32} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386–387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v.**

*Florida* **(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.”**

**{¶ 33}** In this assigned error, Davenport argues the jury lost its way as to the convictions. Specifically, Davenport argues the state presented conflicting and inconsistent testimonies, lacking in credibility. However, the determination of weight and credibility of the evidence is for the trier of fact. *State v. Chandler*, 10th Dist. No. 05AP–415, 2006-Ohio-2070, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *State v. Williams*, 10th Dist. No. 02AP–35, 2002-Ohio-4503.

**{¶ 34}** Here, given the testimony as previously discussed, we are not disposed to reach such a conclusion. After reviewing the entire record, we cannot conclude that any of the evidence weighs heavily against the jury's finding of guilt. Accordingly, we overrule the third assigned error.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed,

any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, J., CONCUR