[Cite as *State v. Wilson*, 2012-Ohio-102.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96380**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANDRE L. WILSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535921

**BEFORE:** Rocco, J., Jones, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 12, 2012

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio 44113-2098

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Maxwell M. Martin
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


KENNETH A. ROCCO, J.:

**{¶ 1}**   Defendant-appellant Andre Wilson appeals from his convictions and the sentence imposed after a jury found him guilty of murder, aggravated murder, and kidnapping, all with firearm specifications.   The trial court additionally found Wilson guilty of having a weapon while under disability ("HWUD").

**{¶ 2}**   Wilson presents eleven assignments of error.   He claims that his right to due process of law was compromised because the prosecutor engaged in improper argument to the jury, the trial court admitted improper evidence and failed to provide necessary jury instructions, the jurors slept during his trial, and his trial counsel provided ineffective assistance.   Wilson also claims that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence, and that he received an improper sentence.

{¶ 3} Upon a review of the record, this court finds that no reversible error occurred at Wilson's trial, and that his sentence is not improper. Consequently, his convictions and sentence are affirmed.

{¶ 4} Wilson's convictions result from an incident that occurred just after 2:00 a.m. on the morning of June 28, 2008. At that time, the Honey Do Lounge was closing, and all the bar's customers were filing out into the parking lot. In the crowd were cousins Shaina and Fatima Germany. The cousins had to wait for Shaina's boyfriend to arrive; she had arranged for him to pick them up at closing for a ride home.

{¶ 5} Shaina passed the time chatting with a girlfriend. Fatima had seen Wilson while she was inside the bar, and she had made up her mind to speak with him. Fatima sought out Wilson who she believed was the father of her then-youngest child, an eight-month-old girl. Fatima became pregnant after a "one-night stand" with Wilson; although she did not know Wilson well, she wanted him to submit to a paternity test. Fatima and Wilson stood near Shaina while they were talking.

{¶ 6} As Fatima was concluding her conversation with Wilson, a man, later identified as Sharrieff Mapp, approached. Mapp commented that the women were "a nice-looking group of females." Mapp then realized the group was mixed; he told Wilson, "I thought you was a bitch standing right there."

{¶ 7} Wilson replied Mapp "could have never thought" any such thing, and walked a

short distance away to "some cars." When he returned, he had a gun in his hand.[1] He pointed the gun at Mapp and ordered him to the ground.

{¶ 8} Mapp protested that he did not mean to offend and held up his hands as he obeyed. The Germany cousins by that point had fled toward the front of the building. Each heard gunshots behind her as she ran.

{¶ 9} When the cousins believed the shooting was over, they returned to the parking lot to see Mapp writhing on the ground. Shaina's boyfriend arrived; the two cousins left the scene. Neither of them wanted to become further involved in the incident.

{¶ 10} One of the bar patrons, Latrice Robbins, saw Mapp as he lay face-forward on the pavement. Robbins watched as the gunman got into a van, which "took off real fast." She called 911 as she ran to Mapp's location. She waited for the emergency squad and spoke to police officers when they arrived.

{¶ 11} Despite medical efforts, Mapp soon died from the gunshot wound. The bullet had entered Mapp's lower back; when the bullet hit his pelvic bone, it deflected to cut into his femoral artery. The detectives who investigated the shooting recovered some bullet casings and obtained a description of the shooter, but were unable to discover his identity.

{¶ 12} Approximately a year-and-a-half later, in January 2010, Shaina Germany became the victim of an armed robbery. She reported the incident to the police. At that time,

---

[1] There was a discrepancy in the witnesses' recollections on this point. Fatima testified she saw one gun, while Shaina testified Wilson had two "semiautomatics."

she decided to acknowledge that she had witnessed the June 2008 shooting at the "Honey Do." Shaina also provided Fatima's name as another witness.

{¶ 13} Both women gave written statements to the detectives. The cousins, however, knew Wilson from their "neighborhood" only by his street name of "Show." The detectives could not locate anyone who went by this street name.

{¶ 14} A few months after Shaina gave her written statement, she heard Wilson had been shot. She called the homicide detectives to report this information. In this way, the detectives located Wilson as he was undergoing hospital treatment for a gunshot wound he sustained on March 20, 2010. The detectives assembled some photo arrays that contained Wilson's picture and showed the arrays on separate occasions to Shaina and Fatima; each woman chose Wilson's photo as the man she knew as "Show."

{¶ 15} Detectives Diaz and Griffin spoke to Wilson during his hospital stay. They did not mention anything concerning the June 2008 shooting; rather, they questioned Wilson about whether he knew his own assailant and other individuals he might know. The detectives mentioned to hospital staff, however, that they expected Wilson would be indicted as the perpetrator of a homicide. A few days after the detectives' interview, but before any police appeared to arrest Wilson, Wilson left the hospital without having been medically discharged.

{¶ 16} The detectives obtained an arrest warrant at the end of March 2010. Police officers executed the warrant in May 2010 at the home of Wilson's girlfriend. Wilson was discovered in an upstairs bedroom, hiding behind a dresser.

{¶ 17} Wilson subsequently was indicted on five counts, charged with two counts of

aggravated murder[2] and two counts of kidnapping, all with firearm specifications, and with HWUD. He executed a jury waiver with respect to the charge of HWUD.

{¶ 18} At the conclusion of his trial, the jury acquitted Wilson on Count 3, but found Wilson guilty on Count 1 of the lesser-included offense of murder, guilty of aggravated murder on Count 2, and guilty of kidnapping on Count 4, as well as guilty on all the firearm specifications. The trial court found Wilson guilty on Count 5, HWUD.

{¶ 19} At sentencing, the state acknowledged Wilson's convictions on Counts 1, 2 and 4 were allied offenses pursuant to R.C. 2945.21(A); the state elected to proceed on Count 2. The trial court thereafter sentenced Wilson to a prison term of three years on the firearm specifications to be served prior to and consecutive with a term of life with the possibility of parole in 30 years. Wilson also received a concurrent three-year term on Count 5.

{¶ 20} Wilson appeals from his convictions and the sentence imposed with eleven assignments of error; they will be combined and addressed together when appropriate.

{¶ 21} Wilson's first assignment of error states:

**"I. Defendant was denied a fair trial by reason of improper prosecutorial argument."**

{¶ 22} Wilson argues that some of the comments the prosecutor made during closing argument to the jury compromised the fairness of his trial. Wilson contends the prosecutor committed the following improprieties: 1) denigrated the defense strategy; 2) opined on the

---

[2]Wilson originally was charged with felony murder specifications in Counts 1 and 2, but the state dismissed these specifications prior to trial.

credibility of the Germany cousins; 3) pointed out Wilson had "no explanation" for leaving the hospital; and, 4) asked the jury to consider the effect of its verdict on the community. Wilson asserts these improprieties, taken together, require reversal of his convictions.

{¶ 23} The test this court must apply in considering a claim of prosecutorial misconduct is twofold; that is, this court must determine whether the prosecutor's remarks *were* improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 1999-Ohio-283, 709 N.E.2d 484; *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, cert. denied, 498 U.S. 1017, 111 S.Ct. 592, 112 L.Ed.2d 596. Thus, a prosecutor's conduct during trial cannot be grounds for reversal unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394. The focus, therefore, is on the fairness of the trial, not the culpability of the prosecutor. *Bey* at 487.

{¶ 24} In general, prosecutors are given considerable latitude in closing arguments. *State v. Ballew* (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369. A prosecutor may comment on what he believes the evidence has shown and the reasonable inferences may be drawn from that evidence. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. A prosecutor is not permitted to express his personal opinion as to the credibility of a witness, the guilt of an accused, or to allude to matters that are not supported by admissible evidence. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.

{¶ 25} Nevertheless, a prosecutor's isolated comments should not be taken out of

context and given their most damaging meaning. *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068. Furthermore, if any misconduct took place in the closing argument, the misconduct must be viewed within the context of the entire trial to determine if prejudice has occurred. *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212.

{¶ 26} In order to determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: 1) the nature of the remarks; 2) whether an objection was made by counsel; 3) whether corrective instructions were given by the court; and, 4) the strength of the evidence against the defendant. *State v. Braxton* (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d. 970. This court would add an additional factor, viz., the consideration to the issue given by the trial court.

{¶ 27} In this case, the record reflects that all of the matters Wilson challenges were presented to the trial court in a motion for a mistrial. See, e.g., *State v. Connor*, Lucas App. No. L-09-1159, 2010-Ohio-6500; cf., *State v. Williams*, Cuyahoga App. No. 95796, 2011-Ohio-5483. The trial court considered the matter and, in the exercise of its discretion, determined that a mistrial was unwarranted. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; *Connor*.

{¶ 28} In making this determination, the trial court first noted the prosecutor's remarks were made in response to argument presented by the defense during their closing. The trial court also indicated that the prosecutor's remarks, while perhaps too "emotional," either fell within the bounds of propriety or were not so egregious as to warrant a mistrial. In the court's view, the prosecutor: 1) sought to depict his version of what the evidence demonstrated; 2) did not exceed fair comment on his view of the defense strategy; 3) corrected himself when the court

sustained the defense's objections; and, 4) regardless of his views on credibility, reminded the jury to consider the law.

{¶ 29}  A review of the record supports the trial court's assessment of the prosecutor's remarks.  Although this court does not condone improper argument, in the context of the entire trial in this case, the prosecutor's remarks in closing argument did not so exceed the bounds of propriety as to affect the fairness of the proceeding.  Therefore, this court will not contravene the trial court's determination on this issue.  *State v. Hancher*, Montgomery App. No. 23515, 2010-Ohio-2507; *Connor*; cf., *Williams*.

{¶ 30}  Wilson's first assignment of error, accordingly, is overruled.

{¶ 31}  Wilson's second, third, fourth and fifth assignments of error state:

**"II.  Defendant was denied due process of law and a fair trial when the court overruled defendant's motion in limine to preclude evidence that defendant was shot and later hospitalized.**

**"III.  Defendant was denied due process of law and a fair trial when the court, after admitting irrelevant evidence, failed to give any curative or limiting instruction.**

**"IV.  Defendant was denied due process of law when the prosecutor allowed Fatima Germany and Shaina Germany to read their entire police statement [sic].**

**"V.  Defendant was denied due process of law when the court failed to explain that the jury view did not constitute evidence in the case."**

{¶ 32}  In each of these assignments of error, Wilson challenges evidentiary matters faced by the trial court.  The decision whether to admit or to exclude evidence rests within the

sound discretion of the trial court. *State v. Jacks* (1989), 63 Ohio App.3d 200, 207, 578 N.E.2d 512. Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233. A reviewing court should not substitute its judgment for that of the trial court. See, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 473 N.E.2d 264.

{¶ 33} Wilson asserts in his second assignment of error that the trial court should have granted his motion in limine to exclude evidence that he had been involved in a shooting incident requiring medical treatment. Wilson claims this evidence was irrelevant and unduly prejudicial. This court disagrees.

{¶ 34} A police officer is permitted to explain the steps he pursued in his investigation of a case. *State v. Rogers* (May 21, 1998), Cuyahoga App. Nos. 72736, 72737; *State v. Holly* (July 8, 1999), Cuyahoga App. No. 74452; see, also, *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 400 N.E.2d 401. The detectives in this case outlined their efforts to establish the identity of the murderer, and the manner in which their investigation led to Wilson.

{¶ 35} Since the testimony was more relevant than prejudicial, and in light of the fact that a portion of Wilson's defense strategy challenged the thoroughness of the police investigation into the identity of Mapp's murderer, the trial court committed no error in permitting the state to introduce the evidence of which Wilson complains in his second assignment of error. *Holly.* It is, accordingly, overruled.

{¶ 36} Wilson next asserts in his third assignment of error that, if the evidence about

his hospitalization were relevant, the trial court nevertheless should have provided a "limiting" instruction to the jury regarding the appropriate purpose for which it should be considered. In making this argument, Wilson fails to offer any suggestion as to what he believes would constitute a proper instruction.

{¶ 37} Wilson also mischaracterizes the evidence, claiming that it fell under Evid.R. 404(B). The rule's purpose is to safeguard a defendant from being convicted, not because of evidence relating to the crime for which he is on trial, but by totally unrelated evidence of other crimes, wrongs or acts attributable to him. However, in this case, the evidence indicated only that Wilson himself had become the victim of a shooting. Evid.R. 404(B), therefore, has no application to the situation presented to the trial court. *State v. Head* (Nov. 21, 1991), Cuyahoga App. No. 59367.

{¶ 38} Consequently, Wilson's third assignment of error also is overruled.

{¶ 39} Wilson complains in his fourth assignment of error that the trial court should not have permitted Shaina and Fatima, on redirect examination, to read for the jury the written statements each woman had provided to the detectives. He contends this testimony violated Evid.R. 801(D)(1)(b).

{¶ 40} Evid.R. 801(D)(1)(b) provides that a prior consistent statement is not hearsay if it "is offered to rebut an express or implied charge against [the declarant] of recent fabrication or improper influence or motive." When a portion of a prior written statement is used to impeach a witness, thereby showing an inconsistency with the current testimony, the entire document may be admitted on rebuttal, in order to rehabilitate the witness. *State v. Loper and Nash*, Cuyahoga

App. Nos. 81400, 81297, and 81878, 2003-Ohio-3213, ¶60, citing *Shellock v. Klempay Bros.* (1958), 167 Ohio St. 279, 282, 148 N.E.2d 57; *State v. Johnson* (Nov. 12, 1998), Cuyahoga App. No. 57790 and *State v. Rivera* (Nov. 9, 1989), Cuyahoga App. No. 56158.

{¶ 41}    In this case, on cross-examination of both Shaina and Fatima, defense counsel sought to impeach their credibility with questions specifically quoting from their prior written statements to the police.    On redirect,[3] the prosecutor asked each woman to read her written statement in order to provide the context in which the statement had been referenced.    This was clearly proper, since on cross-examination an implication of fabrication and improper motive was made, which is the basis for admitting such statements under Evid.R. 801(D)(1)(b).    *State v. Blalock*, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580, ¶27.

{¶ 42}    Accordingly, Wilson's fourth assignment of error also is overruled.

{¶ 43}    In his fifth assignment of error, Wilson argues the trial court committed reversible error by failing to instruct the jury that its trip to the scene of the murder did not constitute evidence in the case.    This argument is rejected for two reasons.

{¶ 44}    First, the record reflects Wilson never brought this issue to the attention of the trial court.    Since the trial court could have addressed the issue had Wilson raised it in a timely manner, he has waived the issue for purposes of appeal.    *State v. Williams* (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph one of the syllabus.

{¶ 45}    Second, the record reflects the jury became aware of the purpose of its view of

---

[3]The defense raised an objection only with respect to Fatima reading her statement on redirect examination.

the scene during opening arguments. The prosecutor mentioned, without objection, that the jurors had "walked around the parking lot" of the Honey Do bar in order to have a "better understand[ing of] the testimony of the witnesses" by the fact that the jurors had seen the place where the murder occurred.

**{¶ 46}** Accordingly, Wilson's fifth assignment of error also is overruled.

**{¶ 47}** Wilson's sixth assignment of error states:

**"VI.  Defendant was denied due process of law when jurors slept during trial."**

**{¶ 48}** In this assignment of error, Wilson claims "if jurors were asleep" during trial, "this would be a denial of due process of law."  This court would agree with his proposition, but notes that nowhere in the record is his claim supported.  Cf., *State v. Majid*, 182 Ohio App.3d 730, 2009-Ohio-3075, 914 N.E.2d 1113.

**{¶ 49}** In fact, the record reflects only Wilson made this assertion, and he made this assertion only at his sentencing hearing.  The trial court listened to his assertion without comment on its accuracy.

**{¶ 50}** During Wilson's trial, moreover, his defense attorneys never mentioned any concern about the jurors' attention to the case.  Under these circumstances, this court cannot conclude his assertion has any merit.

**{¶ 51}** Wilson's sixth assignment of error, therefore, is overruled.

**{¶ 52}** Wilson's seventh and eighth assignments of error state:

**"VII.    Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal.**

**"VIII. Defendant is entitled to a new trial as the verdicts are against the manifest weight of the evidence."**

**{¶ 53}** Despite the phrasing of Wilson's seventh assignment of error, in which he ostensibly challenges the sufficiency of the state's evidence of his guilt, a review of his appellate brief demonstrates Wilson actually argues in both of these assignments of error that his convictions are not supported by the weight of the evidence, because neither Shaina nor Fatima was a reliable witness.

**{¶ 54}** In order to warrant reversal of a jury's verdicts on a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. This court remains mindful in its review, however, that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact to assess. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

**{¶ 55}** Furthermore, the power to reverse a judgment of conviction as against the manifest weight of the evidence must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. This case does not present that rare situation.

**{¶ 56}** Both Shaina and Fatima explained to the jury their reasons for failing to come

forward with the information they had about the murder. Both explained how they felt compelled to come forward, each for a different reason. Although neither woman actually saw Wilson shoot Mapp, they both saw Wilson point a weapon at Mapp and saw Mapp complying with Wilson's order to get on the ground before they heard several shots. Both women testified that, a few days after the murder, Wilson apologized to them in a phone call for putting them "in that situation." Both women were subject to rigorous and thorough cross-examination.

**{¶ 57}** The record further reflects that the other witnesses present at the scene who came forward corroborated many of the details Shaina and Fatima provided about the night of the shooting. The physical evidence also corroborated their version of the murder. Finally, the police officers detailed the course of their investigation, including the efforts they made to identify Wilson as the perpetrator.

**{¶ 58}** In light of the facts that the jury found Wilson not guilty of murdering Mapp "with prior calculation and design," but guilty of the lesser included offense of murder in Count 1 and guilty of committing murder in the course of a kidnapping as charged in Count 2, this court cannot conclude the jury clearly lost its way in considering the evidence in this case. *State v. Davenport*, Cuyahoga App. No. 95911, 2011-Ohio-4635; *Blalock*.

**{¶ 59}** Wilson's seventh and eighth assignments of error, therefore, are also overruled.

**{¶ 60}** Wilson's ninth and tenth assignments of error state:

**"IX. Defendant was denied due process of law when the court sentenced defendant for aggravated murder and notwithstanding the verdict of the jury finding the defendant guilty of murder.**

**"X. Defendant was denied due process of law and his right to jury determination when the court arbitrarily sentenced defendant to thirty years to life for aggravated murder."**

{¶ 61}    Wilson challenges his sentence in these assignments of error.   He first claims the jury's findings of guilt on Counts 1 and 2 were "inconsistent"; therefore, the trial court was required to sentence him for the lesser of the two convictions.   This court does not accept his premise.

{¶ 62}    "To the contrary, the verdicts were entirely consistent."   *State v. Day*, Cuyahoga App. No. 83138, 2004-Ohio-1449, ¶50.   The jury found Wilson "purposely" caused Mapp's death, in violation of R.C. 2903.02(A), and that Wilson "purposely" caused Mapp's death "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping," in violation of R.C. 2903.01(B).

{¶ 63}    Since R.C. 2903.02(A) prescribes the same culpable mental state in causing the death of another as the offense of aggravated murder in R.C. 2903.01(B) does, the jury's determination that Wilson purposely caused Mapp's death in Count 1 is not inconsistent with its finding in Count 2 that Wilson's murder of Mapp occurred with an "aggravating circumstance." *Day*; R.C. 2929.04(A)(7).   See, also, *State v. Johnson* (Apr. 2, 1992), Cuyahoga App. No. 60402.

{¶ 64}    In any event, the Ohio Supreme Court has held that "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict *does not* arise out of inconsistent responses to *different counts*, but only arises out of

inconsistent responses to *the same count*." *State v. Lovejoy*, 79 Ohio St.3d 440, 1997-Ohio-371, 683 N.E.2d 1112, paragraph one of the syllabus. (Emphasis added.)

**{¶ 65}** For the foregoing reasons, Wilson's ninth assignment of error also is overruled.

**{¶ 66}** Wilson argues in his tenth assignment of error that the trial court exceeded its authority when it sentenced him to the statutory maximum without additional facts being found by a jury beyond a reasonable doubt. As authority for his position, he cites *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed2d 403.

**{¶ 67}** This court reviews felony sentences pursuant to the Ohio Supreme Court's plurality decision in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. At ¶4, the *Kalish* court declared that in applying *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, to the existing statutes, appellate courts "must apply a two-step approach."

**{¶ 68}** Appellate courts first must "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." If this step is satisfied, then the trial court's decision is reviewed for an abuse of discretion. *Kalish*, ¶4 and ¶19.

**{¶ 69}** As the *Kalish* court noted at ¶11, after *Foster*, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive, or more than the minimum sentence ." Although *Foster* eliminated mandatory judicial fact-finding, in choosing the appropriate sentence to impose, the trial court must still consider the overriding purposes and principles of felony sentencing and the nonexhaustive factors set forth in R.C. 2929.12. *Kalish*,

¶13.

{¶ 70} There is nothing in the record of this case to demonstrate that Wilson's sentence is inappropriate. The jury convicted him of aggravated murder in violation R.C. 2903.01(B). His sentence of life with the possibility of parole in 30 years is within the statutory range allowed by law. R.C. 2903.03(A)(1)(d); R.C. 2903.04(A)(7). Since Wilson's sentence fell within the statutory range, it is not contrary to law.

{¶ 71} Furthermore, nothing in the record suggests the trial court abused its discretion. The trial court indicated that Mapp was "just talking" to the women near Wilson, and that Wilson's reaction, i.e., obtaining a gun, ordering Mapp face-first to the ground, and then firing the gun several times at the defenseless Mapp until a killing wound was inflicted in Mapp's back, was "just senseless."

{¶ 72} This court agrees with the trial court's assessment. Accordingly, Wilson's tenth assignment of error also is overruled.

{¶ 73} Wilson's eleventh assignment of error states:

**"XI.   Defendant was denied effective assistance of counsel."**

{¶ 74} Wilson argues that his trial counsel's representation was so deficient as to deny him his rights under the Sixth Amendment to the United States Constitution. Wilson asserts his trial counsel should have filed a motion to suppress evidence of the statements he made when he underwent questioning while hospitalized, should have objected when, on redirect examination, Shaina and Fatima read the written statements they gave to the detectives, and should have objected to inadmissible evidence.

**{¶ 75}** In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, a defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive defendant of a fair and reliable trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶ 76}** There are many ways to provide effective assistance in any given case, therefore, scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.; see, also, *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Counsel will not be deemed ineffective for failing to make futile motions. *State v. Parra*, Cuyahoga App. No. 95619, 2011-Ohio-3977, ¶78. Counsel also need not enter unwarranted objections at trial. *State v. Smith*, Cuyahoga App. No. 95541, 2011-Ohio-3581, ¶63.

**{¶ 77}** It is well established that the state may not use statements obtained during a "custodial interrogation" of a suspect unless the police have used procedural safeguards to secure the defendant's Fifth Amendment right against self-incrimination. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus, in order to preserve this right, prior to commencing a custodial interrogation, the police must advise a suspect of his right to remain silent and to have legal counsel present at interrogation. Id. at 467-470.

**{¶ 78}** However, not every interrogation is a custodial one. *State v. Davis*, Clark App. No. 08CA0117, 2010-Ohio-5279. In this case, Det. Smith testified that he merely interviewed

Wilson at the hospital, and that he did not ask Wilson anything about Wilson's possible involvement in any criminal activity. Smith stated adamantly that he especially steered clear of mentioning Mapp's murder.

{¶ 79} Therefore, the totality of the facts and circumstances demonstrate the non-custodial character of Wilson's interrogation. "Considered objectively, a reasonable person in Defendant's position would not have believed, under all of these circumstances, that [he] was under arrest or its functional equivalent." Id., ¶20, citing *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632. Since Wilson was not in custody, *Miranda* warnings were not required, and trial counsel had no obligation to file a motion to suppress this evidence.

{¶ 80} Wilson also claims his trial counsel were deficient in failing to object to certain testimony the state presented. However, he cites no authority to support his claims as required by App.R. 16(A)(7). In *State v. Watson* (1998), 126 Ohio App.3d 316, 321, 710 N.E.2d 340, the court made the following pertinent observations:

{¶ 81} "An appellate court may rely upon App.R.12(A) in overruling or disregarding an assignment of error because of 'the lack of briefing' on the assignment of error. *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393. It is not the duty of an appellate court * * * to support an appellant's argument as to any alleged error. *State v. McGuire* (Apr. 15, 1996), Preble App. No. CA95-01-001, unreported, at 40, 1996 WL 174609, affirmed (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112. 'An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.' Id., following *State v. Lorraine* (Feb. 23, 1996), Trumbull App. No. 95-T-5196, unreported, at 9, 1996 WL 207676."

{¶ 82} Under the circumstances, this court has no obligation to address the other alleged deficiencies Wilson asserts against his trial counsel. *State v. Durham*, Cuyahoga App. No. 94747, 2011-Ohio-2256, ¶44.

{¶ 83} A review of the record demonstrates Wilson's trial counsel defended the case with vigor and thoroughness. Simply put, trial counsel were unsuccessful; they cannot be faulted for failing either to challenge admissible evidence or to surmount the evidence of Wilson's guilt. *Smith*, ¶64.

{¶ 84} Wilson's eleventh assignment of error, accordingly, also is overruled.

{¶ 85} Wilson's convictions and sentence are affirmed.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, P.J., and
EILEEN A. GALLAGHER, J., CONCUR