[Cite as *State v. Brown*, 2013-Ohio-3134.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99024

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAPHEL BROWN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559366

**BEFORE:** E.A. Gallagher, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 18, 2013

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, OH    44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Brent C. Kirvel
Mollie Ann Murphy
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH    44113

EILEEN A. GALLAGHER, J.:

{¶1} Raphel Brown appeals his convictions and sentence in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm in part and reverse in part.

{¶2} A true bill indictment was returned against Brown charging him with seven counts of rape with sexually violent predator specifications; two counts of kidnapping with sexual motivation specifications and sexually violent predator specifications; aggravated burglary; intimidation of a crime victim or witness; resisting arrest; falsification;and breaking and entering.

{¶3} Relevant to the present appeal, the first four counts of the indictment were all alleged to have occurred in the victim's "back living room." The first count alleged that appellant vaginally penetrated the victim while each of Counts 2, 3 and 4 alleged that appellant anally penetrated the victim.

{¶4} Appellant pled not guilty and engaged in discovery with the state of Ohio, including filing a request for a bill of particulars pursuant to Crim.R. 7(E). The state filed a responsive bill of particulars with respect to those specific counts as follows:

Responding to the request of the Defendant, Raphel Brown, for a Bill of Particulars, the Prosecuting Attorney says that the State of Ohio will prove on the trial of the above-entitled case, the following:

Count 1: Rape, 2907.02(A)(2)

That on or about February 1, 2012, and at the location of [address], the Defendant Raphel Brown, did engage in sexual conduct, to wit: Vaginal Penetration in the back living room, with Jane Doe by purposely

compelling her to submit by force or threat of force contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

FURTHERMORE, the offender is a sexually violent predator.

Count 2: Rape, 2907.02(A)(2)

That on or about February 1, 2012, and at the location of [address], the Defendant Raphel Brown, did engage in sexual conduct, to wit: Anal Penetration in the back living room, with Jane Doe by purposely compelling her to submit by force or threat of force contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

FURTHERMORE, the offender is a sexually violent predator.

Count 3: Rape, 2907.02(A)(2)

That on or about February 1, 2012, and at the location of [address], the Defendant Raphel Brown, did engage in sexual conduct, to wit: Anal Penetration in the back living room, with Jane Doe by purposely compelling her to submit by force or threat of force contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

FURTHERMORE, the offender is a sexually violent predator.

Count 4: Rape, 2907.02(A)(2)

That on or about February 1, 2012, and at the location of [address], the Defendant Raphel Brown, did engage in sexual conduct, to wit: Anal Penetration in the back living room, with Jane Doe by purposely compelling her to submit by force or threat of force contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

FURTHERMORE, the offender is a sexually violent predator.

{¶5} The case proceeded to trial where the following facts were presented:

{¶6} On February 1, 2012, M.O. returned to her home in Euclid at approximately

10:30 p.m. M.O.[1] fell asleep on a couch in the back family room of her home. She was awakened around 3:45 a.m. and saw a man dressed in black in the room with her. M.O. testified that the entrances to the home had been locked that night. The man ordered her to lay on her stomach on the floor and then he laid on top of her. He pulled her pants down and penetrated her with his penis twice in her vagina and twice in her anus. Each time she attempted to get up, the man pushed her back to the floor.

{¶7} The intruder forced M.O. to write a note stating that they engaged in consensual sex. The intruder picked her up and forced her into a bedroom in the home where he again penetrated her: twice in the anus and once in the vagina. After these rapes were committed, the intruder took her to a room that was lit well enough that she was able to see his face and she identified him at trial as the appellant. The intruder told M.O. that he had entered the home through a bedroom window on the side of the house. When he left the house, he unlocked the front door from the inside and he neglected to take with him the note that he caused M.O. to write.

{¶8} After appellant left, M.O. called her mother and the police, both of whom arrived on the scene. M.O.'s mother testified that upon arriving at the home, she observed a bedroom window on the side of the house to be open.

{¶9} Officer David Williams of the Euclid Police Department testified that he arrived at M.O.'s home on the morning of February 1, 2012, in response to a call reporting a rape at that location. Williams spoke with M.O. and received a description

---

[1]The victim's initials will be substituted herein although in its charge to the jury, the court did state her name.

of the assailant and his clothing, which he then broadcast to other officers. Williams testified that he received information that a citizen had reported seeing the suspect on East 270 Street and he found appellant there, approximately one-quarter of a mile from the street where M.O. lived. Officer Williams engaged the appellant in conversation and the appellant identified himself as "Eddy Arnold." According to Officer Williams, appellant ran upon the approach of additional police officers.

{¶10} During a search of the area, appellant was found hiding in a garage on East 270. At trial, the homeowner of that property testified that appellant had no permission to enter her property.

{¶11} Detective David Roose testified that he was present at the garage on East 270. Appellant refused police orders to show his hands and exit the garage thereby necessitating the use of a taser on him. Roose testified that the taser was repeatedly deployed and that while he attempted to handcuff the appellant the appellant continued to physically resist.

{¶12} Detective Anthony Medved testified that he interviewed M.O. and also examined her home. He found an open, unlocked window believed to be the point of entry, trampled leaves outside the window, and a footprint with a leaf inside the home near the open window.

{¶13} M.O. was transported to Hillcrest Hospital where Courtney Kwapinski, a Sexual Assault Nurse Examiner ("a SANE nurse"), performed an examination and collected evidence including both vaginal and anal swabs. Ms. Kwapinski testified that M.O. complained of rectal pain, that she had a "possible notch versus estrogized hymen,"

that the vaginal opening was red and "reddened" and that there were abrasions in the anal opening.

{¶14} The specimens obtained at Hillcrest as well as a bucal swab taken from the appellant and a standard from M.O. were submitted to the Ohio Bureau of Criminal Investigation where they were examined. The specimens were determined to be a mixture consistent with both appellant and M.O. indicating that appellant had sexual relations with M.O.

{¶15} At the conclusion of trial, appellant made a motion for acquittal pursuant to Crim.R. 29, which the trial court granted as to Count 11 — intimidation of a crime victim or witness. In addition, the trial court amended Count 14 — breaking and entering to criminal trespass.

{¶16} The state failed to move to amend any of the rape charges in Counts 2, 3 or 4 from anal rape to vaginal rape and the trial court neglected to amend the indictment to conform to the evidence as provided in Crim.R. 7. The instructions to the jury as well as the verdict forms mirrored the indictment language as to those counts but for an amendment from the words "back living room" to "back family room."

{¶17} The appellant was found to be guilty of all charges.

{¶18} Prior to sentencing, the state moved to dismiss all of the sexually violent predator specifications, a motion which the court granted.

{¶19} At sentencing, the trial court merged both counts of kidnapping with the associated rape counts and the state elected to proceed with sentencing on the rapes. The trial court imposed prison terms of eight years on each of the vaginal rapes, ten years

for each of the anal rapes and ten years for aggravated burglary. Appellant was also sentenced to 90 days in the county jail for resisting arrest, six months in the county jail for falsification and 30 days in the county jail for criminal trespass. The eight-year prison terms for the vaginal rapes were ordered to run concurrent to each other; the prison terms for the anal rapes to run concurrent to each other, but those sentences as well as the aggravated burglary sentence were ordered to run consecutive to one another for a cumulative prison sentence of 28 years. Appellant was also advised of five years mandatory postrelease control and was determined to be a Tier III sex offender.

{¶20} In his first assignment of error, appellant argues that the state failed to present sufficient evidence to support his conviction on one of the three anal rape counts in the family room as well as the charge of resisting arrest.

{¶21} This court has said, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*. The weight and credibility of the evidence are left to the trier of fact. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 23.

{¶22} In Counts 1, 2, 3 and 4, appellant was charged with rape in violation of R.C. 2907.02(A)(2), which states, "[n]o person shall engage in sexual conduct with

another when the offender purposely compels the other person to submit by force or threat of force."

{¶23} "Sexual conduct" is defined in R.C. 2907.01(A) as:

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶24} The Constitution of the state of Ohio provides at Article I, Section 10 that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury * * *."

{¶25} In this case, a grand jury returned a true bill indictment with great specificity as to Counts 1, 2, 3 and 4. The indictment specified the location of those rapes and the type of rape committed. There is no dispute that the state failed to present evidence of three anal rapes in the family room. Nonetheless the state failed to move, pursuant to Crim.R. 7, to amend the indictment to conform to the testimony of the victim and the court failed to do so on its own initiative. Furthermore, the jury was specifically instructed as to Counts 2, 3 and 4 that

before you can find the defendant guilty of rape in Count 1 and/or Count 2 and/or Count 3 and/or Count 4 * * * the defendant engaged in sexual conduct with M.O. as follows: In Count 1, vaginal penetration in the back family room. In Count 2, anal penetration in the back family room. In Count 3, anal penetration in the back family room. In Count 4, anal penetration in the back family room * * *.

{¶26} The state, relying on *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987), argues that the above defects should be ignored because the Ohio Supreme Court

has noted that R.C. 2907.02(A)(2) and 2907.01(A) do not require that a specific finding be made by the jury as to the type of rape. *Id*. at 11. A jury need only find that one of the forms of sexual conduct took place between the victim and appellant to find that a rape had been committed. *Id.* The state argues that because the victim testified to two instances of vaginal rape and two instances of anal rape in the back family room, sufficient evidence was presented to support appellant's four rape convictions associated with that room regardless of the indictment and jury instructions. We do not agree.

{¶27} We find *Thompson* to be distinguishable from the present case because *Thompson* did not deal with a sufficiency challenge concerning a defendant indicted, with specificity, to a form of rape and jury instructions patently inconsistent with the facts revealed at trial, but instead dealt with the question of whether, for the purposes of a unanimous verdict, a trial court erred by not instructing a jury to make a specific finding as to whether a defendant committed either vaginal rape, anal rape, or both.

{¶28} We find *State v. Hines*, 145 Ohio App.3d 792, 764 N.E.2d 1040 (8th Dist.2001), to be instructive in the present instance. The defendant in *Hines* was charged with disrupting public service in violation of R.C. 2909.04. The testimony revealed that, at the scene of a fire, the defendant, noticeably agitated, approached a crew of firefighters and began yelling at a pump operator causing the firefighters to call the police. As he walked away, the defendant threw a rock at the firefighters, which struck the pumper. At trial, the firefighters testified that the defendant's conduct interfered with their ability to perform their duties by drawing them away from their posts.

{¶29} The statute allowed for two potential theories of guilt: "(1) the defendant

purposely by any means substantially impaired the ability of the firefighters to respond to the fire or to protect persons or property and (2) the defendant substantially impaired the firefighters' ability to respond by knowingly damaging or tampering with any property." R.C. 2909.04. The indictment specifically charged the defendant with impairment by damaging or tampering with property and the jury instructions described the offense in the same terms as the indictment.

{¶30} This court overturned the defendant's conviction because the evidence was insufficient to show that he knowingly, by damaging or tampering with property, substantially impaired the abilities of the firefighters. This court noted that the indictment was not amended pursuant to Crim.R. 7 to incorporate the other theory of guilt available and thus refused to consider the argument that the evidence supported the defendant's conviction on the alternative theory, which was not charged or instructed.

{¶31} We find *Hines* to be controlling. Our conclusion is further colored by our concerns for the due process rights of defendants. We find the concerns expressed by the Ohio Supreme Court in *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, to be applicable in the present instance. "Due process requires that the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged." *Id*. at ¶ 15. "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged * * *." *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980).

{¶32} In *Lynn*, the defendant broke into his girlfriend's apartment and assaulted her. A Montgomery County Grand Jury indicted Lynn on aggravated burglary and

specified that he trespassed with a purpose to commit theft. Prior to trial, the state filed a motion to amend the indictment to remove the word "theft." Lynn opposed the amendment and the trial court denied the motion. At the conclusion of trial, the trial court instructed the jury on the elements of theft as well as assault. The trial court further "provided interrogatories to the jury to probe whether the jury found that the criminal offense that Lynn entered the apartment with purpose to commit was theft or assault." Lynn did not object to the jury instruction or the interrogatories. The jury returned a guilty verdict on the aggravated burglary charge and in the separate interrogatories unanimously found that Lynn committed the underlying offense of assault and did not commit theft.

{¶33} The Second District Court of Appeals reversed Lynn's conviction holding that the trial court erred in instructing the jury on assault in light of the indictment and had "broadened the possible basis for conviction beyond that considered and specified by the grand jury." *Lynn*, 185 Ohio App.3d 390, 2009-Ohio-6812, 924 N.E.2d 397, at ¶ 20.

{¶34} The Ohio Supreme Court reversed the judgment of the Second District applying a plain error analysis due to Lynn's failure to object to the jury instruction and interrogatories. In regard to Lynn's due process rights, the court explained that an indictment meets constitutional requirements if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Lynn* at ¶ 20, quoting *State v. Buehner*, 110 Ohio

St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 9.

{¶35} The court noted that the better procedure in Lynn's case would have been for the trial court to have allowed the amendment of the indictment prior to trial. *Id.* at 19. However, because Lynn received the state's evidence prior to trial and was aware that the term "theft" was incorrectly stated surplusage, the court concluded that the indictment provided Lynn with sufficient notice of the charge against which he would be called to defend. *Id.* at 21. Therefore, the court found that the trial court did not violate Lynn's due process rights by conforming the jury instructions to the evidence presented at trial and instructing the jury on the correct underlying criminal offense.

{¶36} The present case is distinguishable from *Lynn* because, unlike *Lynn*, the state did not move prior to trial to amend the indictment. In fact, the state did not move for an amendment even after the trial testimony was concluded. Most importantly, in *Lynn* there was no dispute that the defense was aware of the error prior to trial in light of the evidence received from the state and the state's attempt to amend the indictment. In the case before us, there is no such indication that appellant was put on notice that the indictment was inaccurate.

{¶37} Finally, unlike *Lynn*, the trial court here did not conform the jury instructions to comport with the evidence and the jury expressly found three anal rapes in contravention of the evidence adduced at trial.

{¶38} Consistent with this court's decision in *Hines,* we find that the state failed to present sufficient evidence of a third anal rape in the back family room. We decline to consider the state's argument that appellant's rape conviction must stand under

an alternative theory that was neither charged nor instructed.

{¶39} Appellant further argues that his conviction for resisting arrest in violation of R.C. 2921.33(A) was not supported by sufficient evidence. To prove resisting arrest, the state had to prove under this section that appellant did recklessly or by force, resist or interfere with his lawful arrest. The evidence in this case supports his resisting arrest conviction and is consistent with conduct we have previously upheld as sufficient to support a resisting arrest conviction. *See, e.g.*, *State v. Melton*, 8th Dist. No. 97245, 2012-Ohio-2386, ¶ 15. Detective Roose testified to observing another officer commanding the appellant to show his hands, comply and come out of the garage in which he was hiding. Appellant refused to comply necessitating the use of a taser. Even after the taser was initially used, appellant continued to disobey all orders and physically resisted Detective Roose's efforts to effectuate the arrest and handcuff him. Appellant's resistance required all of the detective's strength to handcuff one of his arms and the further use of the taser to force his compliance.

{¶40} Appellant's first assignment of error is sustained, in part, and overruled, in part.

{¶41} In his second assignment of error, appellant argues that reversible error occurred when testimony concerning his refusal to consent to a DNA sample was introduced during the testimony of Detective Medved. Detective Medved testified that he requested appellant to provide a voluntary submission of his DNA and that appellant declined. The prosecutor further noted appellant's refusal to voluntarily provide his DNA during his closing argument.

{¶42}   The record reflects that appellant failed to object to the relevant questioning to which he now takes issue.   In fact, after the jury began deliberating, the trial court provided appellant with an opportunity to make a record of an objection on this matter.   The trial court indicated that the issue of appellant's voluntary DNA submission had been raised in a discussion at sidebar.   However, appellant declined to enter an objection on the record.   Therefore, we review the admission of the evidence under a plain error standard.   *State v. Jaime*, 8th Dist. No. 94401, 2010-Ohio-5783, ¶ 13-16, citing *State v. Gooden*, 8th Dist. No. 82621, 2004-Ohio-2699.   "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise."   *Id*. at ¶ 16.

{¶43}   The Ohio Supreme Court has previously stated, "courts disapprove of penalties imposed for exercising constitutional rights."   *State v. Landrum*, 53 Ohio St.3d 107, 110, 559 N.E.2d 710 (1990).   "Prosecutorial comment that 'cuts down on' a constitutional right 'by making its assertion costly' is forbidden."   *State v. Wiles*, 59 Ohio St.3d 71, 88, 571 N.E.2d 97 (1991), citing *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

{¶44}   Appellant argues that through the admission of the subject testimony the prosecutor improperly commented upon his choice to exercise his Fourth Amendment right to refuse to consent to the DNA swab.   He asserts that evidence that he exercised his Fourth Amendment rights cannot be admitted as proof of consciousness of guilt and equates it to an improper comment upon his Fifth Amendment right to remain silent.

{¶45}   Appellant's arguments are without merit.   In regard to a DNA bucal

swab of an arrestee, the United State Supreme Court recently held that:

> DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.

*Maryland v. King*, 569 U.S. ____, 133 S.Ct. 19958, 186 L.Ed.2d 1 (2013).

{¶46} Furthermore, R.C. 2901.07(B)(1)(a) instructs arresting law enforcement agencies, on or after July 1, 2011, to collect a DNA specimen from an arrestee who is 18 years of age or older during the intake process subsequent to arrest. Because appellant had no Fourth Amendment right to decline to provide his DNA subsequent to his arrest, the testimony to which he takes issue was not improper.

{¶47} Even if we did find the above testimony to have been improperly admitted, the Ohio Supreme Court has recognized that "where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983), citing *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Any error in admitting this isolated testimony was unequivocally harmless beyond a reasonable doubt when considering the record as a whole and the overwhelming evidence of appellant's guilt contained therein.

{¶48} Appellant's second assignment of error is overruled.

{¶49} In his third assignment of error, appellant argues that the trial court erred

in allowing the victim to read her entire police statement into the record on redirect examination after the defense introduced portions of the victim's statement during cross-examination that were not consistent with her testimony in court. Appellant did not object to the introduction of the statement and has waived all but plain error.

{¶50} The decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989). Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989).

{¶51} On cross-examination of the victim, defense counsel sought to impeach her credibility with questions referencing portions of her police statement and implying that she had fabricated relatively minor details of her in-court testimony because she had not included such details in her statement to police. On redirect, the prosecutor elicited the circumstances in which the statement was made, to-wit: in the emergency room at Hillcrest Hospital prior to the SANE exam and asked the victim to read her relatively short written statement in order to provide context. This was proper, since on cross-examination an implication of fabrication and improper motive was made, which is the basis for admitting such statements under Evid.R. 801(D)(1)(b). *State v. Wilson*, 8th Dist. No. 96380, 2012-Ohio-102, ¶ 41. We cannot say that the admittance of the statement amounted to plain error.

{¶52} Appellant's third assignment of error is overruled.

{¶53} In his fourth assignment of error, appellant asserts that his convictions for rape, kidnapping, aggravated burglary, resisting arrest, falsification, and criminal trespass were against the manifest weight of the evidence.

{¶54} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

{¶55} Appellant argues that the evidence at trial indicated the encounter between appellant and the victim was consensual and the jury lost its way in convicting him of the above crimes. We disagree. Appellant bases this assertion on several nebulous pieces of evidence including: the fact that the victim was able to recall a portion of appellant's phone number despite denying any prior contact with appellant; the fact that the victim's home showed no signs of forced entry; the fact that the victim testified that appellant ordered her to write a note indicating the sexual encounter was consensual, but appellant left this allegedly exculpatory note behind with the victim and the SANE nurse's testimony that the victim did not suffer an injury generally consistent with forcible rape.

{¶56} Although appellant suggested in his opening statement that his encounter

with M.O. was consensual, appellant failed to testify or otherwise present any evidence indicative of consent.

{¶57} With the exception of the third anal rape in the back family room addressed in appellant's first assignment of error, in light of the entire record, we cannot say that the finder of fact clearly lost its way in finding appellant guilty of the above crimes. Each of the evidentiary items to which appellant takes issue was explained and outweighed by evidence indicative of a non-consensual encounter. M.O. explained that appellant felt remorse over his actions and wished to "make it up to her," and, apparently to this end, he showed her his cell phone number. M.O. also testified that appellant revealed to her how he gained initial entry to the home. Appellant's intent in ordering the victim to write a note indicating that their sexual encounter was consensual is unclear because even had he retained possession of the note, it would not have been exculpatory in light of the victim's testimony. Finally, although the SANE nurse could not rule out the possibility of a consensual encounter, the nurse testified that the results of her examination were consistent with repeated assault. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶58} Appellant's fourth assignment of error is overruled.

{¶59} In his fifth assignment of error, appellant asserts that he was deprived of his constitutional right to a fair trial due to testimony elicited from the victim regarding her Roman Catholic faith.

{¶60} At trial the prosecutor elicited testimony from the victim that prior to

returning home on the night of the incident, she had been working at a job at her church. The prosecutor then asked if she and her family were practicing Roman Catholics and the victim answered that they were. The prosecutor also asked questions regarding the victim's activity during the day leading up to the incident and the victim testified that she had spent the day at church. Appellant did not object to this testimony.

{¶61} Appellant argues that the above testimony was improperly elicited for the purpose of enhancing the victim's credibility, which is prohibited under Evid.R. 610. *State v. Beasley*, 8th Dist. No. 88989, 2007-Ohio-5432, ¶ 37. Because appellant did not object to this testimony, we review the admission of the evidence for plain error. Plain errors are obvious defects in trial proceedings that affect "substantial rights," and "although they were not brought to the attention of the court," they may be raised on appeal. Crim.R. 52(B). To affect substantial rights, "the trial court's error must have affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Plain error is recognized "only in exceptional circumstances * * * to avoid a miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 94-95, 372 N.E.2d 804 (1978).

{¶62} We decline to find plain error in this instance. Portions of the testimony to which appellant now objects were clearly relevant as context explaining the victim's activity leading up to the incident and relevant to contradict the defense's implication that appellant and the victim met beforehand and that the sexual activity was consensual. Although the state's questioning regarding the victim's religion appears to lack relevance, the testimony was not tied to credibility in any obvious fashion and we cannot say that its

admission rose to the level of plain error.

{¶63} Similarly, we reject appellant's argument that he received ineffective assistance of counsel because his attorney failed to object to the above testimony. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth the two-pronged test for ineffective assistance of counsel. It requires that the defendant show (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The second prong requires showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. In other words, a defendant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

{¶64} As addressed above, we cannot say that appellant was deprived of a fair trial as a result of the introduction of the subject testimony. In light of the record, it cannot be said that there is a reasonable probability that the outcome of the proceedings would have been different had appellant's counsel objected to this particular line of questioning. Accordingly, appellant has not established ineffective assistance.

{¶65} Appellant's fifth assignment of error is overruled.

{¶66} In his sixth assignment of error appellant argues that his prison sentence is contrary to law and an abuse of the trial court's discretion. Appellant argues specifically that the trial court failed to consider R.C. 2929.11 and failed to make the necessary

findings pursuant to R.C. 2929.14(C)(4) prior to imposing consecutive sentences.

{¶67} This court no longer applies the abuse of discretion standard of *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124 (11th Dist.), when reviewing a felony sentence. *State v. A.H.*, 8th Dist. No. 98622, 2613-Ohio-2525, ¶ 7. Instead, we follow the standard of review set forth in R.C. 2953.08(G)(2), which provides in relevant part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶68} A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control and sentences a defendant within the permissible statutory range. *A.H.* at ¶ 10, citing *Kalish* at ¶ 18.

{¶69} The record in the present instance reflects that the trial court did, in fact, consider R.C. 2929.11 in sentencing appellant. The trial court's September 11, 2012

journal entry clearly indicates that the court considered "all required factors of law." Furthermore, the sentencing transcript reflects that the trial court specifically considered the principles and purposes of felony sentencing found in R.C. 2929.11. Appellant's argument that the trial court failed to consider R.C. 2929.11 is without merit.

{¶70} Appellant also contends that the trial court failed to make the necessary findings pursuant to R.C. 2929.14(C)(4) before imposing consecutive prison terms at sentencing. Am.Sub.H.B. No. 86, which became effective on September 30, 2011, "revived" R.C. 2929.14(E)(4) and reinstated the requirement that trial courts make factual findings on specified issues before imposing consecutive sentences. *State v. Matthews*, 8th Dist. No. 97916, 2012-Ohio-5174, ¶ 45.

{¶71} R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime

by the offender.

> A trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." But it must be clear from the record that the trial court actually made the findings required by statute. A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. (Citations omitted.)

*Matthews* at ¶ 48.

{¶72} The record in the present case does not reflect that the trial court made the requisite findings pursuant to R.C. 2929.14(C)(4). Aside from a discussion of appellant's lengthy criminal history, the trial court made no reference or mention of the findings necessary to support consecutive sentences. We find that the trial court erred in imposing consecutive sentences without making the requisite findings.

{¶73} Appellant's sixth assignment of error is overruled, in part, and sustained, in part.

{¶74} Judgment affirmed, in part, and reversed, in part.

{¶75} We vacate one of the three convictions of anal rape as set forth in Counts 2, 3 and 4 because the state failed to present sufficient evidence to sustain one of those convictions. We remand the case to the trial court for a hearing in which the court shall determine which of Counts 2, 3 or 4 should be dismissed.

{¶76} Further, we remand this case for resentencing because the court failed to make requisite findings pursuant to R.C. 2929.14(C)(4). Finally, the journal entry of verdict and conviction incorrectly reflects a guilty verdict and conviction for breaking and entering in violation of R.C. 2911.13 when, in fact, the appellant was found to be guilty

in Count 14 of the lesser offense of criminal trespass in violation of R.C. 2911.21(A)(1), a misdemeanor of the fourth degree. Those journal entries must be corrected to accurately reflect the crime for which appellant was found to be guilty.

{¶77} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR